UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                         :
UNITED STATES OF AMERICA,                                :
                                                         :
            -v-                                          :       20 Cr. 539 (JPC)
                                                         :
ADAM ROGAS,                                              :       OPINION AND ORDER
                                                         :
                        Defendant.                       :
                                                         :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Defendant Adam Rogas is charged with multiple fraud counts in connection with his alleged orchestration of a scheme to misrepresent the financial condition of his company, leading investors to purchase company shares based on false and inflated information of the company's assets and revenue. Before the Court are two pretrial motions that Rogas has filed, both of which are denied for reasons that follow. First, the Court denies Rogas's motion to preclude evidence relating to allegedly defrauded investors who lack ties to the Southern District of New York, because such evidence would fall squarely within the charged conduct. Second, the Court denies Rogas's request for a bill of particulars in light of the detailed information that has been provided to him concerning the alleged fraudulent scheme the Government anticipates proving at trial.

## I. Alleged Criminal Conduct[1]

The following allegations are taken from the Complaint, filed on September 14, 2020, Dkt. 1 ("Complaint"),[2] and the Indictment, filed on October 13, 2020, Dkt. 7 ("Indictment").

---

[1] The factual allegations set forth herein are only allegations, and are being recited merely for purposes of the instant motions. The allegations set out herein have not been proven. Rogas remains innocent unless and until proven guilty beyond a reasonable doubt.

[2] The Government confirmed at oral argument that although "the [G]overnment's investigation . . . continue[s]," it stands behind the Complaint's "core" factual allegations. *See*

Rogas was a founder, the Chief Executive Officer, the Chief Financial Officer, and a member of the Board of Directors of NS8, Inc. ("NS8"), a cyberfraud prevention company based in Las Vegas, Nevada. Indictment ¶¶ 1, 2; Complaint ¶¶ 6, 7.a, 7.b. In substance, the Government alleges that Rogas falsified NS8's financial records to fraudulently exaggerate the company's financial health. In particular, the Government alleges that Rogas modified statements from a corporate bank account (the "Fraudulent Bank Statements") to reflect that NS8 had received greater customer revenue, and therefore held more assets, than in reality, and falsified customer revenue statements (the "Fraudulent Customer Revenue Spreadsheets"), with the similar effect of superficially inflating NS8's assets. Indictment ¶ 3; Complaint ¶¶ 8-12.

Particularly significant to the Government's case appear to be two fundraising rounds during which NS8 sold Series A Preferred Shares to investors. Complaint ¶¶ 7.c, 15.[3] The first fundraising round was held from in or about September through in or about November 2019 (the "Fall 2019 Round"), with the second in or about April 2020 (the "Spring 2020 Round"). *Id.* ¶¶ 7.c.i, 7.c.ii; *see id.* ¶¶ 13, 15.

The Government alleges that Rogas disseminated the Fraudulent Bank Statements and the Fraudulent Customer Revenue Spreadsheets to potential investors in connection with both fundraising Rounds. *Id.* ¶¶ 15-17. During investor due diligence prior to each Round, NS8 made available to potential investors an online file-sharing database, which featured the company's purported financial statements. *Id.* ¶¶ 15.a, 15.f. These financial statements, however, allegedly were based on inflated assets and revenue for NS8. *Id.* ¶¶ 15.a, 15.f. After examining information available to potential investors in connection with the two Rounds, the Government estimates that,

---

6/30/21 Tr. at 26.

[3] As alleged, Rogas "was primarily responsible for [NS8's] fundraising activity." Indictment ¶ 2.

2

for the period of January 2019 through February 2020, the percentage of total assets reported in the NS8 balance sheets that were fictitious ranged from at least approximately 40 percent to over 95 percent. *Id.* ¶ 11. Similarly, the Government estimates that during this same period, the Fraudulent Bank Statements reflected "at least approximately $40 million in fictitious revenue" that "was not, in fact, received by NS8." *Id.* ¶ 12. These statements, in turn, were allegedly represented in the company's income statement and statement of profit and loss. *Id.*[4]

The Complaint lays out Rogas's alleged dealings with two particular investors who expressed interest in buying shares of NS8. "Investor-1," who is based in New York and worked for "Investment Firm-1," received a presentation from Rogas regarding "NS8's business and financial condition," and retained a company to perform due diligence of NS8. *Id.* ¶¶ 15.b, 15.c. The resulting due diligence report incorporated the Fraudulent Bank Statements and led to Investment Firm-1 investing approximately $15 million in NS8 during the Fall 2019 Round. *Id.* ¶ 15.c. The second investor, "Investor-2" at "Investment Firm-2," retained a company (the "Audit Firm") to conduct an audit of NS8. *Id.* ¶ 15.d. The Audit Firm similarly produced a due diligence report based on the fictitious assets and revenue contained in NS8's financial statements, which led Investment Firm-2 to invest approximately $24.1 million during the Fall 2019 Round. *Id.*

During Investment Firm-2's auditing process, an employee of the Audit Firm emailed NS8 to inquire about an apparent discrepancy in an August 2019 statement from NS8's bank account. *Id.* ¶ 17.b. Rogas allegedly replied by sending one of the Fraudulent Bank Statements, which listed $3.3 million in net deposits, whereas the company's bank account in fact contained only $5,739.81

---

[4] The Government alleges that Rogas also distributed misleading financial information to existing investors. Complaint ¶¶ 13-14. Rogas allegedly sent a January 14, 2019 email to an investor that attached a balance sheet and a profit and loss statement for 2018 with falsified financials, and he sent a February 5, 2019 email to a New York-based investor with the Fraudulent Customer Revenue Spreadsheets. *Id.* ¶¶ 14.a, 14.b.

3

at the time.  *Id.* ¶ 17.c.  An employee of the Audit Firm also visited NS8's office in Las Vegas, where the employee observed Rogas and another NS8 employee log into the online portal for certain NS8 bank accounts and download monthly bank statements.  *Id.* ¶¶ 17.d, 17.e.  That auditor emailed another employee of the Audit Firm an attachment of what the employee claimed to have observed Rogas download that day, and that email included the Fraudulent Bank Statements from January 2019 through February 2020.  *Id.* ¶ 17.f.  The Government alleges that the Audit Firm incorporated those inflated bank statements into its due diligence report, which both Investor-1 and Investor-2 reviewed and relied upon when their firms each made an additional $25 million investment in NS8 shares during the Spring 2020 Round.  *Id.* ¶ 17.h.

The Government alleges that, in total, the Fall 2019 Round and the Spring 2020 Round raised at least $123 million in funds for NS8.  *Id.* ¶ 6; *see* Indictment ¶ 3.  With the funds raised from the Spring 2020 Round, NS8 conducted a tender offer, through which it purchased shares from the company's stockholders and option holders.  Complaint ¶ 7.c.ii.  The Government alleges that, in connection with this tender offer, Rogas obtained approximately $17.5 million by selling shares that he held personally and through an entity he controlled.  Indictment ¶ 3; Complaint ¶¶ 7.c.ii, 18.

Rogas was arrested on September 17, 2020, and was arraigned on the Indictment on October 15, 2020.  The Indictment charges Rogas with one count of securities fraud in violation of section 10(b) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78(ff), and Rule 10b-5, 17 C.F.R. § 240.10b-5; one count of fraud in the offer or sale of securities in violation of section 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77q(a), 77(x); and one count of wire fraud in violation of 18 U.S.C. § 1343.

On April 15, 2021, Rogas filed his motion *in limine* seeking to exclude evidence relating to investors and activity without a nexus to this District, Dkt. 29 ("Motion *in Limine*"), and on May 4, 2021, he moved for a bill of particulars, Dkt. 32 ("Bill of Particulars Motion"). The Government submitted an opposition to both motions on May 25, 2021, Dkt. 35 ("Opposition"), and Rogas filed a reply on June 8, 2021, Dkt. 38 ("Reply"). The Court held oral argument on these motions on June 30, 2021.

## II. Motion *in Limine*

Rogas asks the Court to preclude the Government from offering "evidence of criminal activity as it relates to investors and actions that have no connection whatsoever to this jurisdiction." Motion *in Limine* at 4. While not contending that venue is lacking and acknowledging that an investor, *i.e.*, "Investor-1," allegedly had ties to this District, *id.*, Rogas argues that evidence of his interactions with other investors lacking a connection to this District would be inadmissible "evidence of other criminal activity," *id.* at 5-11. Rogas similarly contends that evidence as to allegedly defrauded out-of-District investors is inadmissible "background evidence" that is unnecessary for the Government's proof of the offense charged. *Id.* at 7-8. Rogas further argues that even if the challenged evidence is found to be relevant, it should be excluded pursuant to Rule 403 because any "probative value is significantly outweighed by the threat of unfair prejudice." *Id.* at 5.

### A. The Challenged Evidence Is Directly Relevant to the Charged Conduct

At the heart of Rogas's motion *in limine* is his insistence that the Indictment charges "separate and distinct transactions with individual investors or investment firms" used to "secure independent investments." *Id.* at 4. The Court reads the Indictment differently. Rogas is charged with perpetrating a scheme to defraud investors located in the Southern District of New York as

well as elsewhere. His alleged conduct, which entailed falsifying company bank statements and customer revenue reports, impacted investors who relied upon this inflated information of NS8's financial health. With no challenge to venue, evidence of actions taken in connection with the fraud out of the District, including impacted investors located outside of New York, would plainly be relevant to the charged offenses.

To start, the Indictment alleges that Rogas "operated a fraudulent scheme to deceive NS8's investors by falsely inflating the company's reported revenue and assets by substantial amounts." Indictment ¶ 3. This scheme allegedly entailed making material misrepresentations to "entice[] investors to purchase securities in two fundraising rounds." *Id*. Each Count similarly alleges a scheme to defraud, without limitation to the fraudulent activity occurring in, or the victims being located in, this District. *See id.* ¶¶ 4 (alleging that, "in the Southern District of New York and elsewhere," Rogas committed securities fraud by, among other things, "employing devices, schemes, and artifices to defraud"); 6 (alleging that, "in the Southern District of New York and elsewhere," Rogas committed fraud in the offer or sale of securities because he, among other things, "employed a device, scheme, and artifice to defraud"); 8 (alleging that Rogas, "in the Southern District of New York and elsewhere," committed wire fraud by, among other things, "having devised and intending to devise a scheme and artifice to defraud"); *see also id.* ¶¶ 4, 6, 8 (each alleging that Rogas "knowingly used falsified bank statements to cause material misrepresentations to be made to investors in connection with two NS8 securities offerings").[5] As

---

[5] Each of the charged offenses permits criminal liability for engaging in a scheme to defraud. *See* 17 C.F.R. § 240.10b-5(a) (Count One) (making it unlawful "[t]o employ any device, scheme, or artifice to defraud . . . in connection with the purchase or sale of any security"); 15 U.S.C. § 77q(a)(1) (Count Two) (making it unlawful "in the offer or sale of any securities . . . to employ any device, scheme, or artifice to defraud"); 18 U.S.C. § 1343 (Count Three) (making it unlawful, "having devised or intending to devise any scheme or artifice to defraud," to use the wires "for the purpose of executing such scheme or artifice").

alleged, the scheme involved Rogas deceiving investors through material misrepresentations that included the use of the Fraudulent Bank Statements, which portrayed the company as having tens of millions of dollars in assets and revenue that it did not have. *Id.* ¶ 3; *see* Complaint ¶¶ 8-12, 15. And the Indictment alleges that, through these material misrepresentations, Rogas enticed investors to purchase securities in the two fundraising Rounds, resulting in NS8 raising at least $123 million. Indictment ¶ 3.

In short, the Government alleges that Rogas orchestrated one continuing scheme, which entailed his use of the same or similar falsified information as to NS8's financial health, with the goal of deceiving investors so they would invest in his company. The allegedly defrauded investors—not just the ones with ties to the Southern District of New York—supposedly relied upon these misrepresentations when they purchased NS8 shares. Rogas's alleged dealings with different investors did not entail, as Rogas contends, discrete, distinct, or independent acts of fraud. Nor does the Government's description in the Complaint of Rogas's communications with one New York-based investor somehow alter the charges to only relate to Rogas's conduct as to that individual. What is alleged is a fraudulent scheme that entailed Rogas making material misrepresentations to investors both in New York and elsewhere.

The Court also notes that there is nothing unusual or improper in proving a single fraudulent scheme through multiple acts. *See, e.g.*, *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006) ("[T]his court has long held that 'acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme.'" (quoting *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989)); *United States v. Maloney*, 287 F.3d 236, 241 (2d Cir. 2003) (one count of money laundering alleging a series of financial acts); *United States v. Margiatta*, 646 F.2d 729, 733 (2d

7

Cir. 1981) (combining 50 mailings into one count of mail fraud); *United States v. DiScala*, No. 14 Cr. 399 (ENV), 2018 WL 1187394, at *27 (E.D.N.Y. Mar. 6, 2018) (rejecting the argument "that each single transaction of securities fraud must be charged separately," and emphasizing that "the approved practice in the Second Circuit, where indictments will charge both securities fraud and a conspiracy to commit said fraud, allege a starting and ending date in the securities fraud count, and allege the means of committing the fraud"); *United States v. Haddy*, 134 F.3d 542, 548-49 (3d Cir. 1998) (permitting the Government to allege a "four-part scheme in which the buying and selling of securities was a segment" as a single count). And in the absence of a challenge to venue, *see* Motion *in Limine* at 4, there is no basis to exclude otherwise relevant evidence on account of where that evidence is located. *See United States v. Lange*, 834 F.3d 58, 69-70 (2d Cir. 2016) (explaining that in establishing venue over securities fraud, the Government need only "prove that a criminal act occurred in the district of venue," *id.*, and "[w]here a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done" (quoting *Rodriguez-Moreno*, 526 U.S. 275, 281 (1999))).[6]

For similar reasons, the Court also rejects Rogas's argument that the evidence relating to his actions with other investors is inadmissible under Rule 404(b) as evidence of "other crimes" or "other bad acts." Motion *in Limine* at 8; Reply at 4. The proffered evidence relating to other defrauded investors would not be offered as evidence of a separate "crime, wrong, or act" to prove Rogas's "character" or to show that he "acted in accordance with the character." Fed. R. Evid.

---

[6] Rogas's argument that *Lange* is inapposite because it contained a conspiracy count, Reply at 2, is not persuasive. When discussing venue and reciting the above legal standard, the court in *Lange* was discussing a substantive securities fraud count and considered the conspiracy counts in an separate section of the opinion. *See Lange*, 834 F.3d at 70-71.

404(b)(1). Rather, the evidence would be offered as direct evidence of the fraudulent scheme charged in the Indictment.

In sum, evidence relating to activities in connection with the charged fraudulent scheme outside of the Southern District of New York, including victim investors not based in New York, constitutes direct evidence of the charged conduct, and therefore it is relevant and admissible under Rules 401 and 402. *See* Fed. R. Evid. 401 (explaining that evidence is relevant if it would have a "tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action"); Fed. R. Evid. 402 (providing that any "relevant evidence is admissible" unless precluded by "the United States Constitution; a federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court").

**B.     The Challenged Evidence Is Not Barred by Federal Rule of Evidence 403**

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice," among other concerns. Fed. R. Evid. 403. Thus, having found evidence relating to allegedly defrauded investors outside of the District to be relevant, the Court turns to Rogas's argument that this evidence is unfairly prejudicial and should be excluded under Rule 403.

Given the considerable probative value of this evidence as direct proof of the charged offenses, and the lack of unfair prejudice, the Court finds that the evidence easily survives a Rule 403 analysis. Evidence of Rogas's actions towards each investor would be highly relevant as "proof specific to the offense charged," *Old Chief v. United States*, 519 U.S. 172, 180 (1997), *i.e.*, the fraudulent scheme alleged by the Government. Rogas has failed to point to any unfair prejudice that would substantially outweigh this seemingly highly probative value. *Old Chief*, 519 U.S. at 180 ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from

9

proof specific to the offense charged."). Because "Rule 403 is concerned with 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence,'" *United States v. Mostafa*, 16 F. Supp. 3d 236, 254 (S.D.N.Y. 2014) (quoting *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995)), there is no basis to exclude proof of the alleged fraud that occurred outside of this District.

### III. Motion for a Bill of Particulars

Rogas also seeks a bill of particulars under Federal Rule of Criminal Procedure 7(f), arguing that the Government has provided him with insufficient details as to "the nexus between Mr. Rogas' alleged criminal acts, the allegedly victimized investors, and this jurisdiction." Bill of Particulars Motion at 2. Rogas asks that the Government be required to identify all investors he allegedly defrauded, where they were located during the alleged scheme, their ties to this District, the nexus between Rogas's allegedly fraudulent conduct and this District, and more specific venue-related information as to "Investor-1" and "Investor-2." *Id.* at 3-5.

#### A. Standard for a Bill of Particulars

"The purpose of a bill of particulars is to supplement the allegations in the indictment when necessary to (1) enable the defendant to prepare his defense, (2) avoid unfair surprise to the defendant at trial, and (3) preclude a second prosecution of the same offense." *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 301-02 (S.D.N.Y. 2018) (quoting *United States v. Mandell*, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010)). "A bill of particulars is 'appropriate when there is a need, not where [it is] merely a useful means for a defendant to acquire more detailed pre-trial discovery." *United States v. Griffith*, No. 20 Cr. 15 (PKC), 2020 WL 4369650, at *3 (S.D.N.Y. July 29, 2020) (alteration in original) (quoting *United States v. Rutkoske*, 394 F. Supp. 2d 641, 648 (S.D.N.Y. 2005)). The motion should be granted "'only where the charges of the indictment are

10

so general that they do not advise the defendant of the specific acts of which he is accused.' Moreover, 'a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means.'" *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). It is generally improper to require the Government to describe "the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed" and "the Government is not required to give information that would, in effect, give the defendant a preview of the Government's case before trial." *United States v. Mora*, No. 19 Cr. 514 (JPO), 2020 WL 7496281, at *1 (S.D.N.Y. Dec. 21, 2020) (internal quotation marks and citation omitted). Because the evidence the Government can present at trial will be "limited to the particulars contained in the bill," the Court must be cognizant of the competing interests at play and ensure that the defendant has all "the information necessary to prepare a defense," while minimizing the risk of unduly circumscribing the Government's proof at trial. *United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014) (citations omitted),

"Whether to order the filing of a bill of particulars is a decision that rests within the sound discretion of the district court." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93 (2d Cir. 2008). In deciding whether to grant the motion, "the court must examine the totality of the information available to the defendant—through the indictment, affirmations, and general pre-trial discovery—and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted." *Id.* In particular, courts may also look to "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise

available to the defendant[]." *United States v. Chalmers*, 410 F. Supp. 2d 278, 283 (S.D.N.Y. 2006) (quoting *United States v. Shoher*, 555 F. Supp. 346, 349 (S.D.N.Y. 1983)).

**B.    Rogas's Motion for a Bill of Particulars Is Denied**

Upon review of the charging documents and the Government's representations as to the discovery produced to Rogas, including information concerning any nexus of the alleged criminal conduct to this District, the Court concludes that the Government has sufficiently disclosed its evidence and prosecution theory. These disclosures will allow Rogas to prepare his defense and avoid unfair surprise, rendering a bill of particulars unnecessary.

The Complaint details the Government's theory of the fraudulent scheme, Complaint ¶¶ 6, 9, 13-15, including the means by which Rogas allegedly executed this scheme, *id.* ¶¶ 9-10, and provides approximate dates when the NS8 share offerings occurred, *id.* ¶ 7.c., as well as exact dates and details of certain allegedly fraudulent acts, *id.* ¶¶ 14-17. The Government also has provided Rogas with extensive discovery. *See* Bill of Particulars Motion at 10; Opposition at 12-13. While the sheer volume of discovery can be a basis for granting a motion for a bill of particulars, that need is obviated if there is sufficient time for the defendant to review the materials and when the Government has produced its discovery in an organized manner. *See United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651, at *21 (S.D.N.Y. Jan. 18, 2017) (collecting cases). The Government has represented, and Rogas does not dispute, that it has produced discovery in an "electronically searchable" format and the productions have been "accompanied by itemized indices with Bates ranges." Opposition at 11. The Government also has stated that it named "the victim investors who have made productions directly to the Government" in its discovery cover letters. *Id.* at 13. And the Government further represented at oral argument that

"closing binders," which include investor agreements, have been provided to Rogas in discovery. 6/30/21 Tr. at 28.

Nor does the complexity of the offenses charged militate in favor of ordering a bill of particulars. The Government initially charged Rogas in a fairly detailed Complaint, which describes a relatively straightforward and not particularly sophisticated fraud. The Indictment, though in less detail, also provides an overview of the fraudulent scheme and how it allegedly operated. Indictment ¶ 3. The allegations, in substance, are that Rogas falsified bank statements and customer revenue statements, and that as a consequence, NS8's financial documents reflected that the company had more assets than it in fact did. These fraudulent materials allegedly tricked investors to purchase corporate shares in NS8 while under the misimpression that the company was doing better than it was. And there does not appear to be any confusion on the part of Rogas's counsel as to which documents the Government asserts have been falsified. *See* 6/30/21 Tr. at 18. Rogas's alleged conduct also occurred during a timespan specified in the Indictment. *See* Indictment ¶¶ 4, 5 ("in or about September 2019 up to an including in or about September 2020") (Counts One and Two); 7 ("in or about January 2019 up to and including in or about September 2020") (Count Three). And the fraud allegedly related to the purchase of a single type of investment—*i.e.*, Series A Preferred Shares—that was offered during the two fundraising Rounds in Fall 2019 and Spring 2020. *See* Complaint ¶¶ 7, 13. The Government has not alleged a scheme that involved several companies, different types of investments, and multiple co-conspirators playing varying roles. *Cf. United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010) (ordering a bill of particulars in an insider trading conspiracy case involving "31 stocks" and "dozens of co-conspirators, charged and uncharged").

Rogas's argument for a bill of particulars focuses on his desire for more information about the nexus to this District. *See, e.g.*, Bill of Particulars Motion at 7 (contending that the charging documents fail "to sufficiently allege that Mr. Rogas committed any criminal act implicating this jurisdiction"). But the information provided by the Government has identified purported ties to this District. Complaint ¶¶ 14.b, 15.b. As noted above, Rogas is charged with a scheme that reached investors both within and outside of the Southern District of New York. The Complaint describes the exact date when Rogas sent an existing New York-based investor an email containing fraudulently inflated revenue figures. *Id.* ¶ 14.b. The Complaint also describes Rogas's alleged communications with Investor-1, while Investor-1 was based in New York, Complaint ¶ 15.b, and alleges that Investor-1 ultimately invested approximately $40 million to purchase NS8 shares, *id.* ¶¶ 15.c, 17.h. In addition, at oral argument on June 30, 2021, the Government confirmed that it would provide the identity of Investor-1 to Rogas's counsel. 6/30/21 Tr. at 29, 34.[7] Thus, Rogas has been made aware of certain ties to this District, and cites to no authority requiring the Government to detail the relationship between this District and every act that is a part of a fraudulent scheme. *See United States v. Griffith*, No. 20 Cr. 15 (PKC), 2021 WL 275903, at *11 (S.D.N.Y. Jan. 27, 2021) (denying a defendant's request "to have the government set forth all relevant events that took place in the Southern District of New York" because "[a] bill of particulars is not a method for the defendant to frame an argument that the government's trial evidence concerning venue will be insufficient" (citations omitted)).

Accordingly, in light of the "totality of the information available to the defendant," *Bin Laden*, 92 F. Supp. 2d at 233, the Court denies Rogas's request for a bill of particulars.

---

[7] In addition, in its Opposition, the Government has pointed to various other documents produced in discovery that appear to reference New York. Opposition at 12-13.

### IV. Conclusion

For the aforementioned reasons, Rogas's motion *in limine* and motion for a bill of particulars are denied. The Clerk of Court is respectfully directed to close the motions pending on Docket Numbers 29 and 32.

SO ORDERED.

Dated: July 7, 2021
       New York, New York

                                        JOHN P. CRONAN
                                      United States District Judge